IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00422–WJM–KMT

EDWARD LEE HICKS,

 Plaintiff,

v.

MR. ANDERSON, Individual and Official Capacity, Acting Sgt,
JOHN DOE, Individual and Official Capacity, Acting Booking Deputy,
MR. KEMP, Individual and Official Capacity, Acting Deputy,
COUNSEL TAWNIE, Last Name Unknown, Individual and Official Capacity, Acting
Counselor,
SUSAN KELLER, Individual and Official Capacity, Acting Comm. Corr. Parole Officer,
CATHY HOLST, Individual and Official Capacity, Acting AIC/ADA Legal Assistant,
JULIE RUSSELL, Individual and Official Capacity, Aciting AIC/ADA Legal Assistant,
S. STEINBECK, Individual and Official Capacity, Acting AVCF-ADA Coordinator, and
MS. NELSON, Individual and Official Capacity, Acting HSA for AVCF,

 Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

 This matter is before the court on "Defendants Anderson, Doe, Kemp, and Tawnie's

Motion to Dismiss" (Doc. No. 26, filed July 15, 2011 [Jeff. Cnty. Defs.' Mot.]) and the "CDOC

Defendants' Motion to Dismiss" (Doc. No. 46, filed Aug. 29, 2011 [CDOC Defs.'Mot.]).  For

the following reasons the court respectfully recommends that the Jefferson County Defendants'

Motion to Dismiss be GRANTED, and that the CDOC Defendants' Motion to Dismiss be

GRANTED in part and DENIED in part as follows.

## FACTUAL BACKGROUND

The following facts are derived from Plaintiff's "Amended Prisoner Complaint" (Doc. No. 15, filed June 3, 2011) as well as the parties' briefing with respect to this Recommendation. In this case, Plaintiff alleges that Defendant lost and failed to replace his hearing aid.

On August 16, 2010, Plaintiff, while in the custody of Community Corrections—a division of the Colorado Department of Corrections (CDOC)—was arrested by Defendant Keller, a CDOC Community Corrections Officer, for a community corrections violation. (Compl. at 9; Jeff. Cnty. Defs.' Mot. at 2.)  After his arrest, Plaintiff was transported to the Jefferson County Detention Facility (JCDF), where he was held from August 16, 2010 until October 12, 2010.  (Compl. at 9; Jeff. Cnty. Defs.' Mot. at 2.)  Upon his arrival at JCDF, Defendant Keller inventoried Plaintiff's personal property, including Plaintiff's hearing aid for his right ear, on a Jefferson County Sheriff's Inmate Property Inventory Form.  (Compl. at 9, Ex. 1.[1])  Plaintiff was then transferred, along with his personal property, to the custody of the Jefferson County Sheriff's Department.  (*Id.* at 9.)

---

[1] Plaintiff's Amended Complaint does not feature any exhibits.  However, Plaintiff's original Complaint, filed February 18, 2011 (Doc. No. 1) does contain exhibits.  Moreover, it is clear that Plaintiff is attempting to refer to the exhibits attached to his original Complaint. Accordingly, the court construes Plaintiff's Amended Complaint to include the exhibits attached to his original Complaint—specifically pages 8–83 of Document Number 1 as scanned by the clerk of court.

Defendant Doe, a Deputy Sheriff with JCDF, booked Plaintiff into JCDF and took possession of Plaintiff's personal property.[2]  (*Id.*)  Plaintiff requested, and Defendant Doe agreed, to place Plaintiff's hearing aid in a separate envelope because Plaintiff was concerned that his heavy ring—which was also included in Plaintiff's property—would damage his hearing aid.  (*Id.*)  Plaintiff never saw his hearing aid again.  (*Id.*)

On August 28, 2010, Plaintiff sent an Inmate/Detainee Request Form to Defendant Anderson, the JCDF Booking Sergeant, requesting his hearing aid.  (*Id.* at 10.)  Rather than responding in writing, Defendant Anderson stopped by Plaintiff's cell to inform Plaintiff that his hearing aid was not with his personal property and that he, Defendant Anderson, was otherwise unable to locate it.  (*Id.*)  Defendant Anderson also informed Plaintiff that he contacted Defendant Keller, who informed Defendant Anderson that she did not recall seeing the hearing aid, but that the CDOC would nevertheless take responsibility for the loss.  (*Id.*)[3]

On September 14, 2010, Plaintiff wrote Defendant Holst at CDOC headquarters.  (*Id.* at 13.)  By that letter, Plaintiff maintains that Defendant Holst was "made fully aware of the

---

[2] The court does not comprehend why, in booking Plaintiff, it was necessary to take possession of his hearing aid, an assistive listening device, when eyeglasses are not taken away from inmates upon booking.

[3] Plaintiff told Defendant Anderson that Defendant Keller's representation that she did not recall seeing the hearing aid "makes no sense" because Plaintiff showed her the hearing aid in his ear and she also included the hearing aid in the inventory form that she completed and signed. (Compl. at 10.)  Plaintiff also disputes that Defendant Keller had the authority to authorize that the CDOC would take responsibility for the situation.  (*Id.* at 10-11.)

situation in regards to the Plaintiff's hearing aid." (*Id.* at 13, Ex. 14D.)  That letter was "received and stamped, 09-21-2010." (*Id.*)

On September 15, 2010, Plaintiff spoke with Defendant Kemp.  (*Id.* at 11.)  Defendant Kemp asked Plaintiff whether the hearing aid actually appeared on the Inventory Form completed by Defendant Keller.  (*Id.* at 11.)  After Plaintiff showed him a copy of the inventory form, Defendant Kemp asked Deputy Merill, "who worked in property," to look in Plaintiff's property to locate Plaintiff's hearing aid.  (*Id.*)  Deputy Merill advised Defendant Kemp that Plaintiff's hearing aid was not found with his other property.  (*Id.*)

Thereafter, pursuant to Defendant Kemp's advice, Plaintiff sent a request form to Sergeant Renfro, "who investigates such incidents within the county jail." (*Id.*)  Sergeant Renfro responded on September 21, 2010 that "[t]his issue has been addressed by booking Sgt. Anderson." (*Id.* at 12, Ex. 3.)

On September 24, 2010, Plaintiff filed a Step One Grievance Form "indicating an ADA matter" and submitted it to Defendant Holst.  (*Id.* at 13.)  That grievance was "inclusive in a letter dated 09-27-2010" and was received on September 30, 2010 by the Office of Correctional Services.  (*Id.*)

On September 25, 2010, Plaintiff wrote a letter to Mike Fish, who "tended to situations for those detained within this facility [JCDF]." (*Id.* at 11.)  On September 30, 2010, Defendant Anderson, rather than Mr. Fish, responded to Plaintiff's grievance by stating that "[o]ur administration is aware DOC has accepted responsibility for the Hearing Aid.  When you get to

4

DOC Agent Keller advised they will handle the matter.  Contact DOC on Questions."  (*Id.*, Ex. 4A(1).)

On September 28, 2010, Plaintiff sent an Inmate/Detainee Request to "the watch supervisor."  (*Id.* at 12.)  Again, it was Defendant Anderson who responded to Plaintiff request. (*Id.*, Ex. 6)  Defendant Anderson directed Plaintiff to "[t]ake it up with DOC Parole Officer Keller.  They took responsibility.  Grievance denied.  This is the 4th or 5th time you have been told this."  (*Id.*)

On October 1, 2010, Plaintiff sent a Inmate/Detainee Request to Defendant Tawnie,[4] the JCDF counselor, requesting to see the county jail's ADA coordinator.  (*Id.* at 12.)  Defendant Tawnie saw Plaintiff and was to have "someone" come see him.  (*Id.*)  However, Plaintiff was never seen by the JCDF ADA coordinator.  (*Id.*)

On October 12, 2010, Plaintiff was transferred to the Arkansas Valley Correctional Facility (AVCF).  (*Id.*)  The AVCF property officer, Sergeant Laurent, inspected Plaintiff's property and realized that, notwithstanding the inventory form completed by Defendant Keller, Plaintiff's hearing aid was not included in his personal property.  (*Id.* at 13.)  Accordingly, Sergeant Laurent advised Defendant Steinbeck, AVCF's ADA coordinator, of the situation.  (*Id.*)

Plaintiff was seen by Defendant Steinbeck on or around October 19, 2010.  (*Id.*)  Plaintiff informed Defendant Steinbeck of the situation relating to his hearing aid.  (*Id.*)

---

[4] Plaintiff's Amend Complaint indicates that "Tawnie" is actually Defendant Tawnie's first name, but that he does not know her last name.  (Am. Compl. at 1.)  Accordingly, pursuant to the case caption, the court refers to this defendant as "Defendant Tawnie."

On November 12, 2010, Plaintiff received a memorandum from Defendant Russell, the ADA inmate coordinator/legal services for the CDOC. (*Id.* at 14, Exs. 14-14D.) Attached to that memorandum were four letters and grievances prepared by Plaintiff. (*Id.*) That memorandum acknowledged Plaintiff's position, as outlined in the attached correspondence, that Defendant Keller failed to turn over his hearing aid to the Jefferson County Sheriff's Office, and that Defendant Keller advised Plaintiff and the Jefferson County Sheriff's Office that she would take responsibility for the hearing aid. (*Id., Ex. 14.*) Consequently, Defendant Russell informed Plaintiff that she requested a response from Defendant Keller regarding the matter so that the issue could be immediately resolved. (*Id.*) Defendant Russell also informed Plaintiff that CDOC Clinical Services had been notified of the issue. (*Id.*) Defendant Russell further indicated that she would follow up with Plaintiff and inform him of the outcome, but that he may be given alternative accommodations in the meantime. (*Id.*)

On November 22, 2010, Plaintiff was summoned to the AVCF medical department to speak with Defendant Nelson, AVCF's Health Services Administrator. (*Id.*) Defendant Nelson informed Plaintiff that his request for a replacement haring aid was denied. (*Id.*) Instead, despite Plaintiff's attempts to show that he was not responsible for the loss of his hearing aid, Defendant Nelson informed Plaintiff that he would have to replace the hearing aid himself. (*Id.*) In order to replace his hearing aid, Plaintiff was informed that he would be required to have between $4,000 and $5,000 in his inmate trust account before AVCF medical department would consider replacing his hearing aid. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed his Amended Complaint on March 24, 2011.  In his Amended Complaint, Plaintiff alleges claims against Defendants Anderson, Doe, Kemp, Tawnie (collectively, the "Jefferson County Defendants"), as well as Defendants Keller, Holst, Russell, Steinbeck, and Nelson (collectively, the "CDOC Defendants"),[5] for violations of the Eighth Amendment, the Fourteenth Amendment, and the Americans with Disabilities Act (ADA).  (*Id.* at 20-23.)

Defendants Anderson, Doe, Kemp, and Tawnie filed their Motion to Dismiss on July 15, 2011.  (*See* Jeff. Cnty. Defs.' Mot.)  The CDOC Defendants' Motion to Dismiss was filed on August 29, 2011.  (*See* CDOC Defs.' Mot.)  Plaintiff responded to both Motions to Dismiss on October 28, 2011.  (Doc. No. 53 [Resp. Jeff. Cnty. Defs.' Mot.] & Doc. No. 55 [Resp. CDOC Defs.' Mot.].)  Defendants filed their respective replies on November 14, 2011.  (Doc. No. 57 [Reply CDOC Defs.' Mot.] & Doc. No. 58 [Reply JCDF Defs.' Mot.)  Accordingly, these motions are ripe for review and recommendation.

## LEGAL STANDARDS

### A.     Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

---

[5] A number of other defendants named in Plaintiff's Amended Complaint—namely, Tim Hand, Jim Merril, Sergeant Renfro, Sergeant Web, and Mike Fish—were dismissed on June 23, 2011.  (*See* Doc. No. 18.)

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.       *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

8

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

9

the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949

(citation omitted).

### C.    *Dismissal for Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to

adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the

complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal

courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically

authorized to do so).  The burden of establishing subject matter jurisdiction is on the party

asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A

court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it

becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is

without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see

also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals

for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a

disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v.

Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

10

for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

## ANALYSIS

### I.   *JEFFERSON COUNTY DEFENDANTS' MOTION*

As is pertinent to this Recommendation, the Jefferson County Defendants argue that Plaintiff's claims against them should be dismissed because (1) Plaintiff's individual and official capacity § 1983 claims fail to state a claim for relief, and (2) Plaintiff fails to state a claim under the ADA.  (Jeff. Cnty Defs.' Mot. at 5-7, 9.)

#### A.   *§ 1983 Claims*

##### 1.   *Deliberate Indifference Claims*

It appears that, between Plaintiff's Eighth Amendment claims and his Fourteenth Amendment claims, Plaintiff seeks to establish that Defendants were deliberately indifferent to his serious medical needs.  (*See* Compl. at 20-23.)  Depending on his status at the time he was detained at JCDF—namely, whether he was properly considered a pretrial detainee or an inmate—Plaintiff's claims arise under either the Eighth Amendment's prohibition on cruel and unusual punishment, or the Fourteenth Amendment's Due Process clause.  *See Ingraham v. Wright,* 430 U.S. 651, 671-72 n. 40 (1977); *see also Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  It is not critical to precisely determine

11

Plaintiff's status at that time, however, because the analyses under the Eighth and Fourteenth Amendments are identical. *Lopez,* 312 F.3d at 1315.

A "deliberate indifference" claim involves both an objective and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective prong, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The officials must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, deliberate indifference entails "more than mere negligence," although it is not necessary that the acts or omissions be taken "for the very purpose of causing harm or with knowledge that harm will result. *Id.* at 835.

Here, with the respect to the Jefferson County Defendants, the court assumes that Plaintiff sufficiently alleges the objective component—that is, that his lack of hearing aid amounted to an objectively serious medical need—because the court finds that Plaintiff fails to sufficiently allege that any of the Jefferson County Defendants acted with the requisite culpable

12

mind state.  First, as to Defendant Doe, Plaintiff alleges that Defendant Doe "failed to secure the

Plaintiff's property namely, [his hearing aid]."  (Compl. at 15.)  At best, this amounts to mere

negligence on behalf of Defendant Doe, which is insufficient to state a deliberate indifference

claim.  *Farmer,* 511 U.S. at 835.

The alleged culpability of the remaining Jefferson County Defendants is even less than

that of Defendant Doe.  As to Defendant Anderson, Plaintiff admits that after Defendant

Anderson was alerted of the loss of Plaintiff hearing aid, he looked into the situation and

personally informed Plaintiff that although he was unable to locate the hearing aid, Defendant

Anderson spoke with Defendant Keller and learned that the CDOC would take responsibility for

the loss.  (Am. Compl. at 10.)  These allegations suggest that Defendant Anderson diligently

attempted to remedy the situation.  Additionally, in light of his belief, based on his conversations

with Defendant Keller, that the CDOC would take responsibility for Plaintiff's hearing aid, it

was reasonable for Defendant Anderson to direct Plaintiff to "take it up with [Defendant]

Keller."  (*Id.*, Ex. 6.)

Plaintiff's also fails to sufficiently allege that Defendant Kemp acted with deliberate

indifference.  Defendant Kemp merely asked Deputy Merill to look for Plaintiff's hearing aid,

and then advised Plaintiff to contact Sergeant Renfro after Deputy Merill had searched for the

hearing aid and could not locate it.  (*Id.* at 11.)  Nothing in these allegations suggests that

Defendant Kemp consciously disregarded a risk of harm to Plaintiff; rather, it appears that

Defendant Kemp exhibited genuine concern and took prudent action to remedy the situation.

Finally, Plaintiff's alleges that although Defendant Tawnie represented to Plaintiff that she would have an ADA coordinator come see him, no one ever did.  (*Id.* at 12.)  Again, at very best, these allegation suggested that Defendant Tawnie acted negligently by not following up with an ADA coordinator prior to Plaintiff's departure from JCDF twelve days later, which is insufficient to state a claim for deliberate indifference.

Altogether, the court finds that Plaintiff has failed to allege that any of the Jefferson County Defendants acted with a sufficiently culpable mind state to establish a deliberate indifference claim.  Accordingly, the court finds that Plaintiff's Eighth Amendment claim and Fourteenth Amendment claim, to the extent that it alleges a deliberate indifference claim, are properly dismissed.

### 2.    *Due Process Claims*

Arguably, Plaintiff's Fourteenth Amendment claim also alleges that the loss of his property violated his due process rights.  (*See* Resp. Jeff. Cnty. Defs.' Mot. at 2–3.)  Plaintiff is correct that "wrongful deprivation[s] of property by persons acting under color of state law are justiciable under § 1983."  (*Id.* at 2 (quoting *Mingo v. Patterson,* 455 F. Supp. 1358 (D. Colo. 1978)).  However, to establish such a claim, Plaintiff must allege that the Jefferson County Defendants acted with more than simple negligence.  *Buchanan v. Okla.,* 398 F. App'x 339, 342 (10th Cir. 2010) (quoting *Daniels v. Williams,* 474 U.S. 327, 330-31 (1986)) (noting that *Daniels* "overrul[ed] prior precedent 'to the extent that it states that a mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment'").

14

As established above, Plaintiff's Complaint does not allege that any of the Jefferson County Defendants were more than simply negligent.  Accordingly, to the extent that Plaintiff's Fourteenth Amendment claim seeks to establish that the Jefferson County Defendants violated his due process rights by allegedly losing his hearing aid, the court finds that Plaintiff fails to state a claim for relief.

### 3.      *Official Capacity Claims*

By naming each of the Jefferson County Defendants in their official capacities (Am. Compl. at 1.), Plaintiff effectively asserts claims against the government entity that employs them—that is, Jefferson County through the Jefferson County Sheriff's Office.  *Pietrowski v. Town of Dibble,* 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)).

Municipalities, like Jefferson County, may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom.  *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).  The plaintiff must be able to demonstrate that the "municipality was the 'moving force' behind the injury alleged."  *Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997).  However, a municipality cannot be liable under § 1983 without a predicate constitutional harm inflicted by an officer.  *Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th Cir. 2004) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)); *see also Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317–18 (10th Cir. 2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers").

As discussed above, Plaintiff has failed to sufficiently allege that any of the Jefferson County Defendants violated his constitutional rights.  Accordingly, there is no predicate constitutional harm to hold Jefferson County liable under § 1983.  Therefore, the court finds that Plaintiff's § 1983 claims against the Jefferson County Defendants in their official capacities are properly dismissed.

### B.      ADA Claims

The Jefferson County Defendants argue that Plaintiff fails to state a claim under the ADA.  (Mot. at 11-12.)  The court construes Plaintiff's claim as arising under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; *see also Robertson v. Las Animas Cnty. Sheriff's Dept.,* 50 F.34d 1185, 1193 (10th Cir. 2007) (Title II of ADA "extends to discrimination against inmates detained in a county jail."). To establish a claim under Title II of the ADA must allege that (1) he is a qualified individual with a disability (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.  *Robertson ,* 500 F.3d at 1193 (citing 42 U.S.C. § 12132).

"The proper defendant in a claim under Title II of the ADA is the public entity itself or an official acting in his or her official capacity on behalf of the public entity."  *Nasious v. Colo. – Office of Governor Bill Ritter,* 09-cv-01051-REB-KMT, 2011 WL 2601015, at *3 (D. Colo. June

29, 2011) (citing *Everson v. Leis,* 556 F.3d 484, 501 (6th Cir. 2009).  Title II does not provide for suit against an official of a public entity in their individual capacity.  *Id.*  Therefore, to the extent that Plaintiff has named the Jefferson County Defendants in their individual capacities and, thereby, seeks to hold them individually liable under Title II, his ADA claim is properly dismissed.

To the extent that Plaintiff has named the Jefferson County Defendants in their official capacity as defendants to his ADA claim, the court finds that Plaintiff does not sufficiently allege the second element of a Title II claim.  Specifically, it is unclear what service, program, or activity he was excluded from, or denied the benefits of, on account of his disability.  Rather, Plaintiff's ADA claim largely focuses on whether his hearing impairment makes him a qualified individual with a disability, and otherwise sets forth conclusory allegations that Defendants set limitations on his hearing.  (Am. Compl. at 23.)

Plaintiffs factual allegations do not clarify this matter.  Rather, at best, Plaintiff alleges against the Jefferson County Defendants that Defendant Doe lost Plaintiff's hearing aid, that Defendants Anderson and Kemp actually tried to help Plaintiff track his hearing aid down, and that Defendant Tawnie failed to arrange for an ADA coordinator come to see Plaintiff.  (Am. Compl. at 9-12.)  None of these alleged acts or omissions demonstrate that Plaintiff was excluded from, or denied the benefits of, JCDF's services, programs, and/or activities.

Accordingly, the court finds that Plaintiff fails to state a claim for relief under Title III of the ADA against the Jefferson County Defendants.  As a consequence, the court finds that Plaintiff's ADA claims against these defendants in their official capacity are properly dismissed.

17

*C.*       *Conclusion*

Altogether, the court finds that each of Plaintiff's three claims fails to state a claim for relief against the Jefferson County Defendants in either their official or individual capacities. Accordingly, the court recommends that the Jefferson County Defendants' Motion be granted.

**II.   CDOC DEFENDANTS' MOTION**

In their Motion, the CDOC Defendants set forth a number of arguments as to why Plaintiff's claims against them should be dismissed.  (*See* CDOC Defs.' Mot.)  The court addresses theses arguments in turn below.

*A.       § 1983 Claims*

*1.       Official Capacity Claims*

The CDOC Defendants argues that they are immune from Plaintiff's § 1983 claims to the extent that they seek damages.  (*Id.* at 4.)  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994) (citing *Russ v. Uppah,* 972 F.2d 300, 303 (10th Cir. 1992)).  The CDOC is considered an arm of the state of Colorado; therefore the CDOC Defendants are immune from suit for damages in their official capacities.  *Griess v. State of Colo.*, 841 F.2d 1042, 1044 (10th Cir. 1988) (concluding that Eleventh Amendment immunity was not waived for State of Colorado or CDOC).

However, the Eleventh Amendment does not necessarily bar Plaintiff's claims to the extent they seek prospective declaratory or injunctive relief pursuant to *Ex Parte Young,* 209

18

U.S. 123 (1908).  *Hunt v. Colo. Dept. of Corr.,* 271 F. App'x 778, 781 (10th Cir. 2008).  The *Ex Parte Young* exception applies in cases when a plaintiff seeks only declaratory and/or prospective injunctive relief and has alleged an ongoing violation of federal law by state officials acting in their official capacities.  *See Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008); *Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir.2007); *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir.1998).  ("[A] suit for prospective injunctive relief against a state official acting in her official . . . capacity may still be brought in federal court pursuant to the *Ex Parte Young* doctrine.")

        "To determine whether the *Ex Parte Young* doctrine applies, 'a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Guttman v. Khalsa,* --- F.3d ----, 2012 WL 76055, at *21 (10th Cir. 2012) (*Guttman II*) .  Here, Plaintiff requests injunctive relief seeking to require "Defendant(s) to provide any and all proper medical care to this Plaintiff including any hearing assistive services and devices."  (*Id.* at 26.)  Plaintiff is still an inmate with the CDOC; thus, his request for injunctive relief is not clearly moot and is ongoing.  And Plaintiff's Amended Complaint alleges violations of federal law under both § 1983 and the ADA.  The CDOC Defendants have not argued that the *Ex Parte Young* doctrine is inapplicable to Plaintiff's request for injunctive relief.  (CDOC Defs.' Mot. at 4.)  Accordingly, at this juncture, the court finds that Plaintiff's request for injunctive relief pursuant to his § 1983 claims against the CDOC Defendants are not properly dismissed.

However, *Ex Parte Young* makes it clear that the exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir.1998) (citations and quotations omitted). Plaintiff also seeks a declaration that "the acts and omissions described herein violated Plaintiff's rights under the Constitution and the laws of the United States." (Am. Compl. at 26.) This declaration regarding past conduct is precisely the type of declaration prohibited under *Ex Parte Young*. As such this request for relief is barred with respect his § 1983 claims against the CDOC Defendants in their official capacities.

Altogether, the court finds that Plaintiff's § 1983 claims against the CDOC Defendants in their official capacity are properly dismissed for lack of subject matter jurisdiction to the extent that they seek damages, as well as to the extent that they seek declaratory relief. However, the court finds that, to the extent that Plaintiff's § 1983 claims seek injunctive relief against the CDOC Defendants in their official capacity, the CDOC Defendants' Motion is properly denied.

### 2. *Eighth Amendment Claims*

The CDOC Defendants argue that Plaintiff fails to sufficiently allege both the objective and subjective prongs of a deliberate indifference claim. (CDOC Defs.' Mot. at 6-8.) While the court agrees that Plaintiff fails to state a claim for deliberate indifference against Defendants Keller, Holst, Russell, and Steinbeck, the court finds that Plaintiff's allegations against Defendant Nelson satisfy both prongs of the Eighth Amendment inquiry.

The applicable standard governing deliberate indifference claims is discussed *supra*. The CDOC Defendants maintain that Plaintiff's allegations fails to satisfy the objective prong

because plaintiff appears to be "claiming that medical treatment is being delayed because he is not being provided with a replacement hearing aid." (*Id.* at 7 [citing *Olsen v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993)].) However, Plaintiff plainly alleges that "the [CDOC] Clinical Services *denied* the replacement of the Plaintiff's hearing-aid." (Am. Compl. at 14 [emphasis added].) Courts have found that, under the appropriate circumstances, a denial of a hearing aid to an inmate could constitute deliberate indifference to a serious medical need. *Ayotte v. McPeek,* 08-cv-02508-WYD-MJW, 2009 WL 1965705, at *5 (D. Colo. June 5, 2009) *Report and Recommendation rejected in part on other grounds by Ayotte v. McPeek,* 08-cv-02508-WYD-MJW, 2009 WL 1965523 (D. Colo. July 6, 2009) (concluding that a refusal to provide batteries for and/or service the plaintiff's hearing aid should not be dismissed because it remained to be seen whether the plaintiff's condition amounted to a "serious medical need"); *Large v. Wash. Cnty. Detention Ctr.,* 915 F.2d 1564, 1990 WL 153978, at *2 (4th Cir. Oct. 16, 2007) ("under appropriate circumstances the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need"); *Kollyns v. Gintoli*, No. 3:04-2322-JFA, 2006 WL 2706962, *6 n. 7 (D.S.C. Sept. 15, 2006) ("In certain circumstances, the failure to provide basic corrective/medical devices may amount to deliberate indifference to a serious medical need."); *Snodgrass v. Heinzl*, 05-C-608-C, 2005 WL 3465546, at *7 (W.D. Wisc. Dec. 16, 2005) (declining to dismiss a deliberate indifference claim based on "a state official's failure to provide a prisoner with hearing aids after tests show he needed them to hear because [i]t is arguable that if the normal function[] of . . . hearing can be restored easily by such things as a . . . hearing aid, a state's refusal to provide these things would violate the Eighth Amendment."). *But see Chacon*

21

*v. Ofogh*, No. 7:08cv00046, 2008 WL 4146142, at *4 (W.D.Va. Sept. 8, 2008) (granting

summary judgment to the defendants where, although the plaintiff showed that a hearing

specialist recommended he get hearing aids, he failed to show that such treatment was necessary

for his condition).  Consequently, the court finds that Plaintiff's hearing impairment is sufficient

to constitute a serious medical need at this juncture.

      For his deliberate indifference claim to survive, however, Plaintiff must also allege that

the CDOC Defendants acted with a sufficiently culpable state of mind.  First, the court finds that

Plaintiff fails to allege that Defendant Keller acted with the requisite state of mind.

Notwithstanding his conclusory allegations that all of the defendants acted "malicious[ly] with

evil intent" (Am. Compl. at 20), Plaintiff's factual allegations support an inference that, at best,

Defendant Keller acted negligently by losing his hearing aid.  Indeed, Plaintiff admits that his

hearing aid was "negligently lost."  (*Id.* at 8); *see also Farmer,* 511 U.S. at 834 (negligence is

insufficient to state a claim for deliberate indifference).  Plaintiff also acknowledges that

Defendant Keller took responsibility for that loss—although he disputes that she had the

authority to do so.  (*Id.*)  Finally, Plaintiff does not allege that Defendant Keller somehow

obstructed Plaintiff from obtaining a replacement for his hearing aid after it was confirmed to be

lost.

      As to Defendants Holst, Russell, and Steinbeck, although more precisely a matter of their

personal participation, the court finds that Plaintiff fails to allege these defendants acted in a

manner constituting deliberate indifference to his medical needs.  Plaintiff alleges that he wrote a

letter to Defendant Holst, which made her "fully aware" of the circumstances surrounding the

loss of his hearing aid (Am. Compl. at 13, Ex. 14D), and also later filed a Step One Grievance

her (*id.* at 13).   Defendant Russell merely sent Plaintiff a memorandum acknowledging the

letters and grievances that Plaintiff prepared, informing Plaintiff that she was inquiring into the

circumstances surrounding his hearing aid, and suggesting that, in the meantime, he would be

entitled to alternative accommodations.   (Am. Compl. at 14, Ex. 14.)   Finally, Plaintiff alleges

that he was seen by Defendant Steinbeck and informed the latter of the situation surrounding his

hearing aid.   (*Id.* at 13.)   None of these allegations are sufficient to establish that these

defendants acted with deliberate indifference to Plaintiff's serious medical needs.   *See Larson v.*

*Meek,* 240 F. App'x 777, 781 (10th Cir. 2007) (a defendants "denial of [] grievances alone is

insufficient to establish personal participation in the alleged constitutional violations.");

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (holding that mere participation in

the grievance process, without any connection to the violation of constitutional rights, generally

is insufficient to establish personal participation).

However, the court finds that Plaintiff sufficiently alleges that Defendant Nelson acted

with the requisite culpable mind state.   Plaintiff alleges that, despite learning of the

circumstances surrounding Plaintiff's hearing aid—including that it appeared that Plaintiff was

not responsible for the loss of his hearing aid (*see* Am. Compl, Exs. 4A, 14) and that the

Department of Corrections previously issued Plaintiff a hearing aid (*see id.,* Ex. 15)—Defendant

Nelson nevertheless informed Plaintiff that his request for a replacement hearing aid was denied

(*id.* at 14).[6]  Defendant Nelson also informed Plaintiff that he would be responsible for replacing the hearing aid, at a cost of between $4,000 and $5,000, despite the fact that a CDOC official, Defendant Keller, had taken responsibility for losing the hearing aid.[7]  (*Id.* at 14.)  This intentional deprivation of an appropriate assistive hearing device, where there was no indication that Plaintiff was at fault for the loss of his original hearing aid, sufficiently alleges that Defendant Nelson was deliberately indifferent to Plaintiff's serious medical needs.

Accordingly, the court finds that Plaintiff fails to allege a deliberate indifference claim against Defendants Keller, Holst, Russell, and Steinbeck and that, consequently Plaintiff's deliberate indifference claims against these defendants are properly dismissed.  However, the

---

[6] To be sure, it is not entirely clear from Plaintiff's Amended Complaint who made the ultimate decision to deny Plaintiff a replacement hearing aid.  (*See* Am. Compl. at 15.)  More specifically, it is not clear whether Defendant Nelson made this decision herself on behalf of CDOC Clinical Services, or whether it was perhaps made by her superiors.  In the event that the decision was instead made by her superiors in CDOC Clinical Services, and assuming that Defendant Nelson conveyed to them all of the relevant details surrounding the loss of Plaintiff's hearing aid, then the facts may bear out that Defendant Nelson did not act with the requisite culpability.  *Sealock,* 218 F.3d at 1209 (10th Cir. 2000) (a prison medical official who know that her role in a particular medical scenario is solely to serve as a gatekeeper to other medical or prison personnel may be held liable under deliberate indifference if that person "delays or refuses to fulfill that gatekeeper role").  However, the court finds that this question is appropriate for discovery, and should not be resolved at this preliminary juncture.  Moreover, if it proves that the decision was ultimately made by unknown members of CDOC Clinical Services, the court finds that it would surely be appropriate to grant Plaintiff leave to amend his Amended Complaint to name these members of CDOC Clinical Services.  Ultimately, it is clear to the court that whoever ultimately made the alleged decision to deny Plaintiff a replacement hearing aid acted with deliberate indifference to his medical needs.  Nevertheless, in light of the present ambiguity on that issue, the court finds it prudent to let Plaintiff's deliberate indifference claim against Defendant Nelson proceed.

[7] Indeed, it is unclear to the court why, of anyone, Plaintiff would have to pay $4,000 to $5,000 for his hearing aid when Defendant Keller clearly took responsibility for the loss.

court finds that Plaintiff sufficiently alleges that Defendant Nelson acted with deliberate indifference.  Therefore, the CDOC Defendants' Motion is properly denied to the extent that it seeks to dismiss Plaintiff's Eighth Amendment claim against Defendant Nelson.

### 3.      Fourteenth Amendment Claims

The CDOC Defendants also argue that Plaintiff fails to state a § 1983 claim for violations of the Fourteenth Amendment.  (CDOC Defs.' Mot. at 8-9.)  Again, as discussed above with respect to the Jefferson County Defendants, in order to state a claim for a due process violation based on the loss of his hearing aid, Plaintiff must allege that the CDOC Defendants acted with more than mere negligence.  *Buchanan,* 398 F. App'x at 342.  Here, to the extent that Defendant Keller was involved in the loss of Plaintiff's hearing aid, Plaintiff's factual allegations clearly demonstrate that, at best, Defendant Keller acted negligently in losing Plaintiff's hearing aid. (*See* Am. Compl. at 8–10.)  As noted above, neither Defendants Holst, Russell, or Steinbeck, personally participated in the loss of Plaintiff's hearing aid.  *See Larson,* 240 F. App'x at 780 (a defendants "denial of [] grievances alone is insufficient to establish personal participation in the alleged constitutional violations.").  However, as discussed above, Defendant Nelson's denial of a replacement hearing aid may well amount to an intentional deprivation of Plaintiff's property.

Nevertheless, "the United State Supreme Court has held that neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy . . . ." *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989) *overruled on other grounds by Clark v. Wilson,* 625 F.3d 686, 691 (10th Cir. 2010).  Adequate state remedies are not limited to filing of

grievances, but include filing complaints in state court. *Cooper v. Belcher,* 2010 WL 3359709, at *15 (D. Colo. Aug. 25, 2010).

Here, Plaintiff filed a number of grievances and wrote other letters relating to the loss of his hearing aid. (*See* Am. Compl. Exs. 14, 14A, 14B, & 14C.) *Hudson v. Palmer,* 468 U.S. 517, 536 n.15 (1984) (A prison grievance procedure is an adequate postdeprivation remedy if the grievance procedure provides a meaningful review); *see also Williams v. Morris,* 697 F.2d 1349, 1351 (10th Cir. 1982). Defendant Russell responded to those grievances by informing Plaintiff that the matter was being looked into. (Mot., Ex. 14.) The fact that Plaintiff's grievances were not successful, by itself, does not mean that the grievance procedure was not an adequate remedy. *Jennings v. Zavaras*, 10-cv-01772-BNB, 2010 WL 3885420, at *1 (D. Colo. Sept. 29, 2010) In any event, the court further notes that Plaintiff also had an adequate remedy available to him in state court under state law. *Id.*; *see also* Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101 *et seq.*. In fact, it appears that Plaintiff initially attempted to avail himself of that remedy (Mot., Ex. 16.), but ultimately chose to file this federal action instead.

Therefore, even to extent that Defendant Nelson intentionally deprived Plaintiff of his property, because state law remedies were available to Plaintiff in the form of both grievance procedures and filing a complaint in state court, Plaintiff fails to state a claim for a due process violation under the Fourteenth Amendment. Accordingly, the court finds that Plaintiff's Fourteenth Amendment claims against the CDOC Defendants are properly dismissed.

### 4.    *Punitive Damages Pursuant to § 1983*

The CDOC Defendants maintain that punitive damages are inappropriate in this case because there is no indication that the failure to replace his hearing aid after his transfer to AVCF was done with an evil motive.  (CDOC Defs.' at 6.)  With respect to Defendant Nelson, the court completely disagrees.

Punitive damages are available in a 42 U.S.C. § 1983 action when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others.  *Smith v. Wade,* 461 U.S. 30, 56 (1983); *see also Soderbeck v. Burnett Cnty.,* 752 F.3d 285, 291 (7th Cir. 1985) (stating that "punitive damages . . . are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that it s wrongfulness is apparent to the person who engages in it, and not just to a lawyer").

Assuming Plaintiff's allegations are true, as the court must, Defendant Nelson chose to deny Plaintiff a replacement hearing aid, notwithstanding the fact that Plaintiff clearly required a hearing aid—indeed Plaintiff acquired his original hearing aid from the CDOC—and notwithstanding the fact that a CDOC official had taken full responsibility for the loss of his hearing aid.  Such a decision is, at a minimum, manifestly capricious and, if true, easily amounts to reckless or callous indifference to Plaintiff's Eighth Amendment rights.  It should have been more than clear to Defendant Nelson that such a decision was unjust.  *Soderbeck,* 752 F.3d at 291.  Accordingly, while Plaintiff's failure to state a § 1983 claim against the other CDOC Defendants obviously prevents levying punitive damages against them, the court finds that, at

27

this juncture, Plaintiff's request for punitive damages against Defendant Nelson appears wholly appropriate.

### B.    ADA Claims

The CDOC Defendants also seek to dismiss Plaintiff's ADA claims against them in both their official and individual capacities.  (CDOC Defs.' Mot. at 4, 9.)  The court finds that Plaintiff's ADA claims against the CDOC Defendants in their individual capacities are properly dismissed, but that Plaintiff's ADA claims against the CDOC Defendants in their official capacities are not properly dismissed.

As already discussed with respect to the Jefferson County Defendants, "[t]he proper defendant in a Title II claim is the public entity itself or an official acting in his or her official capacity." *Nasious*, 2011 WL 2601015, at *3.  Accordingly, to the extent that Plaintiff seeks to hold the CDOC Defendants individually liable for violations of the ADA, the court finds that Plaintiff's ADA claims are properly dismissed.

The CDOC Defendants also argue that "Title II of the ADA does not provide a waiver of the CDOC Defendants' sovereign immunity under the Eleventh Amendment.  (CDOC Defs' Mot. at 4.)  However, the CDOC Defendants rely solely on *Thompson v. Colorado,* 278 F.3d 1020, 1034 (10th Cir. 2001).  *Thompson* has clearly been overruled.  *Guttman v. Khalsa,* 446 F.3d 1027, 1034 (10th Cir. 2006) (*Guttman I*).  A determination as to whether a state defendant named in their official capacity is entitled to sovereign immunity requires a much more extended

analysis.[8]  *See Guttman II* , --- F.3d ----, 2012 WL 76055, at *11-19.  The CDOC Defendants

clearly have not engaged in this inquiry.  The court will not consider this question without

appropriate briefing on the issue.

Perhaps anticipating that their perfunctory argument that they are entitled to sovereign

immunity as to Plaintiff's ADA claims would be rejected, the CDOC Defendants maintain for

the first time in their Reply that Plaintiff fails to state a claim under the ADA.  (Reply CDOC

Defs.' Mot. at 3–5.)  "[A]rguments raised for the first time in a reply brief are generally deemed

waived." *United States v. Harrell,* 642 F.3d 907, 918 (10th Cir. 2011).  The court sees no reason

to depart from that general rule.  Plaintiff has not had an opportunity to respond to this argument.

Accordingly, the court finds it proper to deny the CDOC Defendants' Motion to the extent that it

seeks to dismiss Plaintiff's ADA claims against them in their official capacity.

---

[8] Specifically, "the Supreme Court has held Congress may abrogate state sovereign immunity if Congress (1) unequivocally indicates its intent to abrogate state sovereign immunity, and (2) acts pursuant to a valid grant of constitutional authority under § 5 [of the Fourteenth Amendment]." *Guttman II,* --- F.3d ----, 2012 WL 76055, at *11 (citing *Bd. of Trustees v. Garrett,* 531 U.S. 356 (2001)).  There is no question that Congress intended Title II to abrogate state sovereign immunity as the ADA specifically provides:  "A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."  42 U.S.C. § 12202.  Thus, in evaluating the second prong of the sovereign immunity analysis, the court must "consider 1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations." *Guttman II,* --- F.3d ----, 2012 WL 76055, at *12 (citing *City of Boerne v. Flores,* 521 U.S. 507, 529–36 (1997) & *Tennessee v. Lane*, 541 U.S. 509, 522 (2004)).  The Tenth Circuit's analysis of this issue in a different context consumed more than nine pages of the *Guttman II* opinion.  *Id.* at *11-19.  Clearly, the CDOC Defendants' single sentence argument based on an overruled case falls short.  (*See* CDOC Defs.' Mot. at 4.)

### C.      *Prison Litigation Reform Act*

Finally, the CDOC Defendants argue that Plaintiff's request for compensatory damages is barred by the Prison Litigation Reform Act (PLRA).  (CDOC Defs.' Mot. at 5.)  The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber,* 251 F.3d 869, 876 (10th Cir. 2001).  This provision of the PLRA, however, does not foreclose a prisoner's claim for nominal or punitive damages.  *Id.* at 879 (citation omitted); *McDaniels v. McKinna,* 96 F. App'x 575, 581 (10th Cir. 2004).

Unfortunately, the PLRA does not provide a statutory definition for the term physical injury.  *Clifton v. Eubanks,* 418 F. Supp. 2d 1243, 1246 (D. Colo. 2006).  However, it is clear that while the injury must be more than *de mimimis*, it need not be significant.  *Id.*  The adjective "physical" means "of or relating to the body."  Merriam-Webster's Collegiate Dictionary 935 (11th ed. 2007).

Obviously, Plaintiff's original hearing impairment predated the events alleged in his Amended Complaint and thus cannot form the basis of the physical injury required by the PLRA.  However, due to the CDOC Defendants' alleged actions, Plaintiff suffered hearing loss for a sustained period beginning on August 16, 2010 and, ostensibly, continuing through to this day.  In light of the PLRA's relatively low threshold, the court finds that this hearing loss, for now well-over a year, sufficiently alleges a physical injury under the PLRA.  Therefore, the court

finds that the CDOC Defendants' Motion is properly denied to the extent that it seeks to dismiss Plaintiff's request for compensatory damages for emotional and mental trauma.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants Anderson, Doe, Kemp, and Tawnie's Motion to Dismiss" (Doc. No. 26) be GRANTED.

Further, the court respectfully

RECOMMENDS that the "CDOC Defendants' Motion to Dismiss" (Doc. No. 46) be GRANTED in part and DENIED in part as follows:

1.     The court RECOMMENDS that the CDOC Defendants' Motion to Dismiss be GRANTED to the extent that it seeks to dismiss: (a) Plaintiff's § 1983 claims for damages and declaratory relief against Defendants Keller, Holst, Russell, Steinbeck, and Nelson in their official capacity; (b) Plaintiff's § 1983 claims against Defendants Keller, Holst, Russell, and Steinbeck in their individual capacities; (c) Plaintiff's § 1983 Fourteenth Amendment claim against Defendant Nelson in her individual capacity; and (d) Plaintiff's ADA claims against the CDOC Defendants in their individual capacities.

2.     The court RECOMMENDS that the CDOC Defendants' Motion to Dismiss be DENIED to the extent that it seeks to dismiss: (a) Plaintiff's § 1983 claims for injunctive relief against Defendants Keller, Holst, Russell, Steinbeck, and Nelson

31

in their official capacities; (b) Plaintiff's § 1983 deliberate indifference claim

against Defendant Nelson in her individual capacity; (c) Plaintiff's ADA claims

against the CDOC Defendants in their official capacities; (d) Plaintiff's request

for punitive damages under § 1983; and (e) Plaintiff's request for compensatory

damages for emotional and mental trauma.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 23rd day of January, 2012.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge

33